# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| DUSTIN BRAZIL, Individually, and as Next Friend of J.B., <br><br> and <br><br> CONNIE WEYER, <br><br>     Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> AUTO-OWNERS INSURANCE CO. (MUTUAL), <br><br>     Defendant/Counterclaim Plaintiff. | Case No. 2:20-cv-4030-NKL |

## ORDER

Auto-Owners Insurance Co. (Mutual) moves for summary judgment, and Plaintiffs cross-move for summary judgment, on Plaintiffs' claims for declaratory judgment against Auto-Owners and on Auto-Owners' counterclaim for declaratory judgment against Plaintiffs.

Each motion for summary judgment is granted in part and denied in part.

### I. Uncontroverted Facts

#### A. The Vehicular Collision

On March 22, 2018, a vehicle driven by Amber Metcalf crossed the center lane of a road, striking head-on a vehicle driven by Jessica Brazil. Ms. Brazil and her minor child Malachi were killed. Ms. Brazil's minor child J.B. was injured. Amber Metcalf also was killed in the accident.

#### B. The Insurance Policy

The parties agree that Amber Metcalf was uninsured at the time of the collision.

The automobile that Ms. Brazil was driving was covered by an Auto-Owners' insurance policy (the "Policy") issued to named insured Advantage Marine. There is no dispute that Ms. Brazil, Malachi, and J.B were occupancy insureds under the Policy. The dispute between the parties concerns how much uninsured coverage the policy provides for the collision and those injured in it.

The Policy's Missouri Uninsured Motorist Coverage form states, in relevant part, as follows:

> (1) Occupying means being in or on an auto as a passenger or operator, or being engaged in the immediate act of entering, boarding or alighting from an auto.
>
> . . .
>
> 2. COVERAGE
>
> a. We will pay compensatory damages, including but not limited to loss of consortium, that any person is legally entitled to recover from the owner or operator of an uninsured auto for bodily injury sustained while occupying an auto that is covered by SECTION II –LIABILITY COVERAGE of the policy.
>
> . . .
>
> 4. LIMIT OF INSURANCE
>
> We will pay compensatory damages, including but not limited to loss of consortium, for bodily injury up to the Limit of Insurance shown in the Declarations for Uninsured Motorist Coverage as follows:
>
> a. The limit shown for "each person" is the amount of coverage and the most we will pay, subject to 4.b. below, for all compensatory damages, including but not limited to loss of consortium, because of or arising out of bodily injury to one person in any one occurrence.
>
> b. The limit shown for "each occurrence" is the total amount of coverage and the most we will pay, subject to 4.a. above, for all compensatory damages, including but not limited to loss of consortium, because of or arising out of bodily injury to two or more persons in any one occurrence.[1]

---

[1] The Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions."

> c. If you are an individual and the policy insures more than one of your autos for Uninsured Motorist Coverage, our Limit of Insurance for only you or your relatives is as follows:[2]
>
> (1) The Limit of Insurance for each person shall be the sum of the "each person" limits shown in the Declarations for each such auto.
>
> (2) The Limit of Insurance for each occurrence shall be the sum of the "each occurrence" limits shown in the Declarations for each such auto.
>
> d. Except as provided in 4.a., 4.b. and 4.c. above, the Limit of Insurance is not increased because of the number of:
>
> (1) Autos shown or premiums charged in the Declarations;
>
> (2) Claims made or suits brought;
>
> (3) Persons injured; or
>
> (4) Autos involved in the occurrence.

The Declarations of the Policy states that the "Uninsured Motorist" limits are "$1,000,000 each person / $1,000,000 each occurrence."

## II. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Durham D & M, LLC*, 606 F.3d 513, 518 (8th Cir. 2010) (citation omitted); Fed. R. Civ. P. 56(a). The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to

---

[2] The Policy defines "You" or "your" as "the named insured shown in the Declarations and if an individual, your spouse who resides in the same household."

judgment as a matter of law." *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 669 (8th Cir. 2019) (quotation marks and citation omitted).

### III. Discussion

The parties' disputes revolve around two questions of policy interpretation. The first question is whether the uninsured motorist "each person" and "each occurrence" provisions are ambiguous. The second question is whether the policy is ambiguous as to the amount of the uninsured motorist limit—as Auto Owners puts it, whether "stacking" is permitted. The Court considers these issues in turn.

#### A. Whether the Uninsured Motorist "Each Person" and "Each Occurrence" Provisions Are Ambiguous

The Policy's Missouri Uninsured Motorist Coverage form provides, in relevant part, as follows:

> 4. LIMIT OF INSURANCE
>
> We will pay compensatory damages, including but not limited to loss of consortium, for bodily injury up to the Limit of Insurance shown in the Declarations for Uninsured Motorist Coverage as follows:
>
> > a. The limit shown for "each person" is the amount of coverage and the most we will pay, subject to 4.b. below, for all compensatory damages, including but not limited to loss of consortium, because of or arising out of bodily injury to one person in any one occurrence.
> >
> > b. The limit shown for "each occurrence" is the total amount of coverage and the most we will pay, subject to 4.a. above, for all compensatory damages, including but not limited to loss of consortium, because of or arising out of bodily injury to two or more persons in any one occurrence.

Both the "each person" and "each occurrence" provisions cap recovery at $1 million.

Plaintiffs argue that the "each person" and "each occurrence" limits are ambiguous because each is "subject to" the other, and therefore it is not clear where "the music stops . . . ." Doc. 24, p. 15. Defendant argues that the "each person" and "each occurrence" limits are not ambiguous,

that the "subject to" language merely reflects that the provisions "are indeed 'affected by or possibly affected by' one another . . . ." Doc. 20, p. 15.

Interpretation of an insurance policy is a question of law. *McCormack Baron Mgt. Services, Inc. v. Am. Guarantee & Liab. Ins. Co.,* 989 S.W.2d 168, 171 (Mo. banc 1999). "In construing the terms of an insurance policy, th[e] Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007) (quotation marks and citation omitted); *see also Wolfe Auto. Grp., LLC v. Universal Underwriters Ins. Co.*, 808 F.3d 729, 731–32 (8th Cir. 2015) ("Absent ambiguity, Missouri courts will interpret the language of a policy according to its plain meaning as understood by an ordinary insured of average understanding.") (citing *Piatt v. Ind. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. banc 2015)). As with any contract,[3] an insurance policy's terms "are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003).

"Language is ambiguous if it is reasonably open to different constructions." *Seeck*, 212 S.W.3d at 132. For example, if "an . . . insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous, and the ambiguity will be resolved in favor of coverage for the insured." *Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 204 (Mo. Ct. App. 2007).

Here, 4.a, the "each person" provision, provides that the most Auto-Owners will pay for damages for bodily injury to one person in any occurrence is $1 million, subject to 4.b. 4.b, the

---

[3] *See Capitol Indem. Corp. v. Callis,* 963 S.W.2d 247, 249 (Mo. App. W.D. 1997) (noting that the rules of contract construction apply to insurance policies).

"each occurrence" provision, provides that the most Auto-Owners will pay for damages for bodily injury to two or more persons in any occurrence is $1 million, subject to 4.a.

Auto-Owners argues that the "subject to" language means only that the two provisions should be read together. Doc. 27, p. 10. Auto-Owners argues that "one addresses the available coverage available for any one claimant, and the other addresses the total available coverage for any one accident." Doc. 27, p. 9. Auto-Owners further argues that, "[w]hen an accident involves multiple claimants, each claimant may only collect up to the 'per person' limit, even if the 'per occurrence' limit makes the total coverage available for the accident higher than the 'per person' limit. Conversely, the 'per occurrence' limit sets the total amount of coverage available for any one accident, even when there are multiple claimants whose separate 'each person' limits would total more than the 'each occurrence' limit, if not otherwise limited by the terms of the 'per occurrence' limit." *Id*.; *see also* Doc. 20, p. 16 ("[E]ven in cases in which a policy's 'each occurrence' limit provides coverage in excess of the 'each person' UM limit, each individual claimant is still subject to the 'each person' limit, and cannot recover more than the per person limit."). In other words, Auto-Owners argues that the Limit of Insurance provisions merely mean that, "[i]n cases involving more than one claimant, . . . one person cannot recover more than the 'each person' limit, despite the 'each occurrence' limit, and multiple persons cannot recover more than the "each occurrence" limit despite the 'each person' limit." Doc. 27, p. 13.

The first problem with this argument is that it treats the terms "subject to" as synonymous with the word "despite," when, in fact, "subject to" and "despite" have opposing meanings. The term "subject to" conveys dependence (*see Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/subject%20to (last accessed July 2, 2020) (defining "subject to" as, *inter alia*, "affected by or possibly affected by (something)" and "dependent on

6

something else to happen or be true"); American Heritage Dictionary of the English Language (5th Ed. 2020) (defining "subject" as, *inter alia*, "Contingent or dependent: *a vacation subject to changing weather*").[4] In contrast, the term "despite" conveys independence of other language. *See Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/despite (last accessed July 2, 2020) (defining "despite" as "[i]n spite of; notwithstanding").

A more fundamental problem with Auto-Owners' argument in this case stems from the fact that the limit for "each person" and for "each occurrence" is the same, $1 million. *See Long v. Shelter Ins. Companies,* 351 S.W.3d 692, 700 (Mo. App. W.D. 2011) (holding that terms must be interpreted in the context of the policy as a whole, rather than in isolation). If Auto-Owners intended to cap recovery at $1 million for any one occurrence, regardless of how many people were injured, then the separate "each person" and "each occurrence" provisions would not have been necessary. In other words, under Auto-Owners' interpretation of the Policy, the limit of insurance for any occurrence is $1 million, regardless of how many people are injured. Under such an interpretation, the "each person" provision is superfluous: regardless of whether one or more persons are injured, the insurance coverage is capped at $1 million. Yet, Missouri law requires an insurance policy to "be read to give effect to all its provisions so as to avoid rendering any provision superfluous." *Seaboldt v. Universal Underwriters Ins. Co.*, 384 F. App'x 536, 539 (8th Cir. 2010); *see State ex rel. Blue Springs Sch. Dist. v. Grate*, 576 S.W.3d 262, 271 (Mo. Ct. App. 2019) ("We aim to give a reasonable meaning to every provision of an insurance policy and to avoid an interpretation that renders some provisions trivial or superfluous.") (quotation marks

---

[4] The Court applies to the phrase "subject to" "the meaning [that] would be attached by an ordinary person of average understanding if purchasing insurance." *Jones v. Mid–Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009).

and citation omitted); *see also Dunn Indus. Grp.*, 112 S.W.3d at 428 ("A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense."). Thus, Auto-Owners' interpretation, which would in effect do away with the each-person provision, flies in the face of the basic rules of contract construction.[5]

Notably, in the cases that Auto-Owners cites that discuss "subject to" language in limits of insurance provisions in a policy, the "each occurrence" limit was higher than the "each person" limit. *See American Family Mut. Ins. Co. v. Gardner*, 957 S.W.2d 367, 368 (Mo. App. E.D. 1997) (considering "$100,000 per person and $300,000 per occurrence liability limitation provision[s]"); *Ward v. American Family Ins. Co.*, 783 S.W.2d 921 (Mo. App. E.D. 1989) ("[T]he Wards were protected by coverage of $100,000 per person and $200,000 per accident."); *see also Brown v. Donham*, 900 S.W.2d 630, 633-34 (Mo. banc 1995) (discussing "$100,000 per person limit" and $200,000 "per occurrence limit"). Those cases thus are not instructive here.

Here, the "each occurrence" provision could be reasonably understood by a lay person as capping the uninsured motorist coverage at $1 million, except as provided in 4.a. *See* Policy, Uninsured Motorist form, 4.b. ("The limit shown for 'each occurrence' is the total amount of coverage and the most we will pay, subject to 4.a. above, for all compensatory damages, including

---

[5] The fact that the "each person" and "each occurrence" limits both are $1 million also logically precludes Auto-Owners' argument that the "subject to" language comes into play when "the 'per occurrence' limit makes the total coverage available for the accident higher than the 'per person' limit"—such is not a possibility under Auto-Owners' proffered interpretation of the Policy.

Tellingly, Auto-Owners' acknowledges that, "[h]ad the Policy stated a $1 million per person limit and a $2 million per occurrence limit, Plaintiffs would have no basis for advancing any ambiguity argument. Doc. 20, p. 13. Although Auto-Owners argues that "[t]he fact that the two limits are the same does not compel a contrary conclusion," it provides no legal or logical support for this assertion.

but not limited to loss of consortium, because of or arising out of bodily injury to two or more persons in any one occurrence.") 4.a, in turn, sets a limit for "each person" at $1 million. A reasonable person could read 4.a. as providing a $1 million limit for bodily injury to any "one person in any one occurrence"—that is, to "each person" injured, and not just a single person. *See* Policy, Uninsured Motorist form, 4.a. ("The limit shown for "each person" is the amount of coverage and the most we will pay, subject to 4.b. below, for all compensatory damages, including but not limited to loss of consortium, because of or arising out of bodily injury to one person in any one occurrence."). But 4.a. is subject to 4.b.

The provisions can reasonably be read as contradictory, and yet, each of the provisions purports to be subordinate to the other. Because it is not clear which of the two "subject to" provisions trumps the other, the provisions are at a minimum ambiguous. *See Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo banc. 1997) ("An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy."); *see also Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 318 (Mo. Ct. App. 1999) (holding that, where there is "misreference and confusion, caused by the insurer's own drafting," the "muddled policy language . . . should be deemed ambiguous because it 'could confuse the average lay person' and leave that person with a misleading impression as to coverage") Multiple courts have held circular references and definitions ambiguous. *See, e.g., Weider Health & Fitness v. AusTex Oil Ltd.*, No. 17--2089, 2019 WL 1324049, at *2 (S.D.N.Y. Mar. 25, 2019) ("[T]he crossreferences in these two provisions are circular and ambiguous. [E]ach provision purports to be more expansive than the other, by wholly including the other." (quotation marks and citation omitted)); *Coats v. Reliance Standard Life Ins. Co.*, No. 16-0233, 2019 WL 2435677, at *5 (N.D. Okla. June 11, 2019), *appeal dismissed* (Sept. 3, 2019) ("[T]he circularity of

the second sentence renders the definition of 'Covered Monthly Earnings' ambiguous as to what 'special compensation' is excluded."); *Brewington v. State Farm Mut. Auto. Ins. Co.*, 45 F. Supp. 3d 1215, 1219 (D. Nev. 2014) ("Such circular definitions are inherently ambiguous as they require additional information outside the definition to actually define the term being defined."); *Sewell v. Sheet Metal Workers' Nat'l Pension Fund*, No. 16-0117, 2017 WL 7038173, at *19 (D. Neb. Aug. 9, 2017) ("The court finds the terms and definitions in the 1990 Plan are circular, inconsistent, and ambiguous."); *Barnard v. Advance Pension Plan*, No. 06-6265, 2008 WL 4838844, at *7 (D. Or. Nov. 4, 2008) ("At best, the circularly defined plan term[s] . . . are ambiguous, so that Barnard's reasonable interpretations prevail."); *Ostrowiecki v. Aggressor Fleet, Ltd.*, No. 07-6598, 2008 WL 3914901, at *1 n.3 (E.D. La. Aug. 19, 2008) ("Given the circularity of the Bodily Injury definition, the Court concludes that this definition is ambiguous. Such ambiguity is to be construed against the drafter . . . and in favor of coverage."). A lay person trying to make sense of the contradictory but mutually subordinate provisions reasonably could conclude that the $1 million each-occurrence limit gives way to the $1 million each-person limits when more than one person is injured.

Auto-Owners also seems to argue that interpreting the Policy as providing more than $1 million in coverage for one occurrence "ignores that the Policy's UM limits are clearly stated on the Policy's Declarations to be "$1,000,000/each person/$1,000,000 each occurrence." However, under Missouri law, "[w]hen evaluating [an insurance] policy as a whole, [courts] must also follow the Supreme Court's repeated dictate that declarations pages 'do not grant any coverage' but 'are introductory only and subject to refinement and definition in the body of the policy.'" *Geico Cas. Co. v. Clampitt*, 521 S.W.3d 290, 293 (Mo. Ct. App. 2017) (citing, *inter alia*, *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. 2014)); *Floyd-Tunnell*, 439 S.W. at 221 ("At the

outset, the policies' declarations pages do not grant any coverage. The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage."). Insofar as there is an inconsistency between the Policy and the Declarations, the Policy controls.

Because the Limit of Insurance provisions are ambiguous, the Court must interpret them against Auto-Owners, that is, as providing a $1 million limit per person, as stated in 4.a., despite the circular "subject to" language in both 4.a. and 4.b. *See Ware v. Geico Gen. Ins. Co.*, 84 S.W.3d 99, 102 (Mo. App. E.D. 2002) (noting that "where a term of an insurance policy is ambiguous, it is construed against the insurer"). "[I]nsurance is designed to furnish, not defeat, protection to the insured and the insurance company is in the best position to remove ambiguity from a contract." *Id.* Here, Auto-Owners could easily have removed the ambiguity from the Policy. Its failure to do so requires declaratory judgment on this point in Plaintiffs' favor.

### B. Whether the Uninsured Motorist Limit Is Ambiguous

Plaintiffs separately argue that the Policy is ambiguous as to the amount of the uninsured limit available to them. Plaintiffs' argument is based on 4.d., the uninsured motorist "Limit of Insurance," which states:

> d. Except as provided in 4.a., 4.b., and 4.c. above, the Limit of Insurance is not increased because of the number of:
>
> (1) Autos shown or premiums charged in the Declarations;
>
> (2) Claims made or suits brought;
>
> (3) Persons injured; or
>
> (4) Autos involved in the occurrence.

Plaintiffs argue that from 4.d., "an ordinary person of average understanding could reasonably conclude paragraphs 4.a. and 4.b. each provide that the uninsured 'each person' limit of insurance

may be increased because of the number of autos shown or premiums charged in the Declarations, claims made or suits brought, persons injured, or autos involved in the occurrence."[6] Plaintiffs acknowledge that there is no language in 4.a. or 4.b. that suggests that the limit of insurance may be increased because of the number of autos shown, premiums charged in the Declarations, claims made or suits brought, or autos involved in the occurrence. Plaintiffs merely argue that the fact that 4.d. indicates that 4.a. and 4.b. provide for exceptions to the anti-stacking provision, and 4.a. and 4.b. do not provide for those enumerated exceptions, establishes an ambiguity that requires the Court to permit stacking.

As discussed above, 4.a. sets a $1 million per-person limit and 4.b. sets a $1 million per occurrence limit—and each provision purports to be "subject to" the other. A reasonable reading of 4.d. is that it clarifies that, where multiple persons are injured, the Limit of Insurance may be increased as set forth in 4.a.—that is, up to $1 million per person—which further supports the Court's finding above that 4.a. must be construed as providing a $1 million limit per person, regardless of 4.b.'s arguably subordinate per-occurrence limit.

However, neither 4.a. nor 4.b. provides any exception for "(1) Autos shown or premiums charged in the Declarations; (2) Claims made or suits brought; . . . or (4) Autos involved in the occurrence." In other words, as Plaintiffs acknowledged at oral argument, there is no textual support for Plaintiff's argument that 4.d.'s reference to 4.a. and 4.b. suggests that the Limit of Insurance might be increased for autos shown, premiums charged, claims made or suits brought, or autos involved in the occurrence.

---

[6] There is no dispute that 4.c. provides for increased limits in certain situations but is not applicable here.

Plaintiffs acknowledge that Missouri law does not require stacking of uninsured motorist coverage for occupancy insureds. Doc. 24, p. 19 ("Although occupancy insureds are not entitled to stack or aggregate uninsured coverage, there is no Missouri law or public policy that prevents an insurer from selling uninsured coverage that allows stacking or aggregation by occupancy insureds."). Without language in the Policy affirmatively permitting stacking of uninsured motorist coverage for occupancy insureds, Plaintiffs cannot establish an entitlement to stack the uninsured coverage. Because the Policy does not expressly or by implication provide for stacking under the circumstances presented in this case, Plaintiffs are not entitled to an increased Limit of Insurance because of the premiums charged or the number of autos shown or involved in the occurrence, claims made, or suits brought.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 19) is granted in part and denied in part, and Plaintiffs' cross-motion for summary judgment (Doc. 23) is granted in part and denied in part. The Court declares that the Policy is ambiguous as to whether the "each person" or "each occurrence" limit applies to uninsured motorist coverage, and therefore the Policy must be construed as providing up to $1 million in coverage for the death of Jessica Brazil, up to $1 million in coverage for the death of Malachi Brazil, and up to $1 million in coverage for bodily injuries to J.B, despite any apparently contradictory language in the "each occurrence" provision (4.b.). The Court further declares that the Policy does not provide for increased uninsured motorist

coverage for occupancy insureds based on the premiums charged or the number of autos shown or involved in the occurrence, claims made, or suits brought.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: July 23, 2020  
Jefferson City, Missouri